## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 09-B-34810 |
|---|---|---|---|
| **DATE** | September 30, 2010 | **ADVERSARY NO.** | 10-A-00448 |
| **CASE TITLE** | In re Timothy D. Hancz, Debtor<br><br>Weems & Stephens Equine Hospital, Inc., Plaintiff<br><br>v.<br><br>Timothy D. Hancz, Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Debtor's Motion to Dismiss Count I of the Plaintiff's Adversary Complaint is GRANTED.

■[ For further details see text below.]

## MEMORANDUM OPINION

### A. Factual Background

The Plaintiff is an equine hospital who treated the Debtor's former show horse, Luckys Katrina ("Katrina"), and who by this adversary seeks to find the unpaid balance for that treatment nondischargeable

under Section 523(a)(2)(A) or 523(a)(6) of the Bankruptcy Code. The Debtor has filed an answer for the Section 523(a)(6) claim, but has filed a motion under Rule 12(b)(6), as made applicable by Bankruptcy Rule 7012, to dismiss the Section 523(a)(2)(A) claim for failure to state a claim. Under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995); Dixon v. Am. Cmty. Bank & Trust (In re Gluth Bros. Constr., Inc.), 424 B.R. 379, 388 (Bankr. N.D. Ill. Nov. 25, 2009).

According to the complaint, the Debtor brought Katrina to the Plaintiff's hospital on February 14, 2007. Before the Plaintiff would treat Katrina, it requested a credit card number which could be used if the hospital expenses were not paid. The Debtor provided a credit card number, and the Plaintiff admitted Katrina. The hospital treated Katrina, including performing two surgeries, and discharged Katrina from the hospital on March 20, 2008. While the hospital 'discharged' Katrina, they did not actually release the horse at that time, and it was not until May 20, 2008, that the Debtor sent his agent to the hospital to retrieve Katrina. The Plaintiff initially refused to release Katrina until the outstanding hospital bill was paid. However, on the same day, the Debtor telephoned the Plaintiff and informed it that a wire transfer was underway, and that the funds would be deposited into the Plaintiff's account by the end of the day. Based on this representation, the Plaintiff released Katrina. Despite the representation, the Plaintiff never received a wire transfer and when it tried to apply charges on the credit card number that the Debtor had provided, the charges were declined. The Plaintiff made attempts to collect the unpaid bill, and ultimately was granted a judgment in Texas state court of $20,856.00 on November 6, 2008. The Debtor filed a petition for relief under Chapter 7 with this Court on September 20, 2009. As of the petition date, the amount of debt owing on the state court judgment was $22,477.78, which the Plaintiff seeks to be found nondischargeable.

### B. Discussion

Under Section 523(a) of the Bankruptcy Code, a discharge in bankruptcy does not discharge a debt:
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

11 U.S.C.A. § 523(a)(2) (West 2010). To state a claim under the false pretenses or false representation prongs of § 523(a)(2)(A), the creditor must allege the following elements: "(1) the debtor made a false representation of fact; (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation." Deady v. Hanson (In re Hanson), 432 B.R. 758, 771 (Bankr. N.D. Ill. July 13, 2010) (Squires, J.) (citing Ojeda v. Goldberg, 599 F.3d 712, 716-17 (7th Cir. 2010)). False pretenses in the context of § 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression. Id.

### 1. The Credit Card Number

The Plaintiff argues that "[p]roviding a credit card number in exchange for services to be performed was an implied representation by Debtor that there was sufficient credit available on the credit card to pay for the services that Debtor asked Creditor to perform." However, the Court is not convinced that merely providing a

credit card number upon request, without additional conduct or statements, can constitute a "misrepresentation" for purposes of Section 523(a)(2)(A). In New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez), Judge Schmetterer stated that "the utterance of a bad check, without more, is insufficient to show a false misrepresentation ... because a check is not a 'statement'; rather, it is ... a mere promise to pay money in the future either to the drawee or a holder, if the check is dishonored." 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (citing Williams v. United States, 458 U.S. 279, 284, 102 S. Ct. 3088 (1982)); see also, e.g., Goldberg Sec., Inc. v. Scarlata (In re Scarlata), 979 F. 2d 521, 525 (7th Cir. 1992) (agreeing with district court that tendering check for which debtor did not have assets did not constitute a "false pretense" for purposes of Section 523(a)(2)(A)); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 960 (Bankr. N.D. Ill. 1995) (Schmetterer, J.) (holding that "as a matter of law, in the absence of a positive statement regarding the sufficiency of the bank account, Bryson's issuance of the checks to Banner does not constitute a false pretense or false representation within the meaning of § 523(a)(2)(A)."). If a check, which actually references a specific monetary amount, is not sufficient to constitute a misrepresentation, then the simple provision of a credit card number to a merchant is certainly not sufficient. While cases have held that additional statements or conduct might bring the passing off of a bad check within the realm of Section 523(a)(2)(A), see, e.g., Zamora v. Jacobs (In re Jacobs), 403 B.R. 565, 574 (Bankr. N.D. Ill. 2009) (Sonderby, J.) (acknowledging that passing a bad check in itself did not constitute a fraudulent misrepresentation, but that "additional circumstances surrounding the NSF checks," such as repeated statements that debtor "would make good on the checks" brought "the allegations within the realm of a section 523(a)(2) misrepresentation."), the Plaintiff has not alleged any such additional statements or conduct surrounding the provision of the credit card number.

Moreover, even if the Court were to infer a statement from the number, it is not the type of statement that could support a Section 523(a)(2)(A) claim. The Plaintiff has not alleged that the credit card number was not real or that it was not the Debtor's credit card. Instead, the Plaintiff claims that giving the number was an implied statement "that there was sufficient credit available on the credit card to pay for the services that Debtor asked Creditor to perform." Such a statement would be a statement regarding the Debtor's financial condition, which is excluded from Section 523(a)(2)(A) and cannot qualify under Section 523(a)(2)(B) because it was not in writing. See, e.g., Citibank (S. Dakota), N.A. v. Michel, 220 B.R. 603, 605 (Bankr. N.D. Ill. 1998) (stating that if using a credit card is a representation as to ability to repay, it is not the kind of representation permitted under Section 523(a)(2)(A)); In re Bryson, 187 B.R. at 960 ("[E]ven if the checks constituted a representation as to the solvency of K-C or as to the amount of money in K-C's account [Section 523(a)(2)(A)], by its terms, does not apply to false pretenses, false representations, or actual fraud respecting an insider's or the debtor's own financial condition."). Also, since the credit card number was not provided for immediate payment, but rather for security, and the payment was not charged until months later, it was at best a statement about the Debtor's expected available credit at some future date. However, representations for Section 523(a)(2)(A) "must be of current or past facts. Promises to do an act in the future are not false representations." In re Sanchez, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (citing Caez v. Jacob, No. 97 B 27010, 97 A 01644, 1998 WL 150493, *4 (Bankr.N.D.Ill. 1998)). Therefore, the Debtor's provision of the credit card number under the circumstances alleged does not support a claim under Section 523(a)(2)(A).

## 2.    The Statement About the Wire Transfer

The statement about the wire transfer also fails to support a claim under Section 523(a)(2)(A) because it was made <u>after</u> the services were provided. By its terms, the statute only applies to "debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by" the fraudulent misrepresentation. The debt sought to be declared non-dischargeable here is for the veterinary services provided by the Plaintiff. But, such services could not have been "obtained by" the statement about the wire transfer, since the statement was made after the services had already been provided. Nor can the release of the Debtor's horse be considered a "service." While continuing to keep, feed and maintain a horse might easily constitute a service, ceasing to provide those services is not a service. According to the allegations made in the Complaint, the Debtor or his agent picked up the horse, and therefore the Plaintiff did not incur delivery charges.

Nor can the horse constitute 'property obtained by' the misrepresentation for purposes of Section 523(a)(2)(A). Katrina was the Debtor's own horse, and the Plaintiff has not identified how the 'debt' could be for Katrina, rather than the veterinarian services.[1] This case is therefore very similar to a recent case from the Western District of Pennsylvania. In <u>Jones v. Dressler (In re Dressler)</u>, 431 B.R. 127 (June 30, 2010), the debtor obtained the release of his truck from a towing company by giving it a bad check. The towing company brought a complaint under Section 523(a)(2)(A) to find the unpaid amount for its towing services non-dischargeable, claiming the bad check constituted a false representation that it would be honored. However, the court found that Section 523(a)(2)(A) was not applicable because it was only the release of the truck that was obtained by the check, not the towing services which created the debt. <u>Id.</u> at 132. While the plaintiff argued that the truck constituted "property" for the purposes of Section 523(a)(2)(A), the court noted that the plaintiff's claim was "not the Tractor Trailer or its return, it is the services performed on such vehicle." <u>Id.</u> While there is an older, pre-<u>Scarlata</u> case from Indiana, <u>In re Fitzgerald</u>, 109 B.R. 893 (Bankr. N.D. Ind. 1989), where the court found that a bad check used to obtain the release of a repaired car from a repair shop could support a Section 523(a)(2)(A) claim, the <u>Dressler</u> court distinguished <u>Fitzgerald</u>. In <u>Fitzgerald</u>, the debtor had also made additional false representations before the repair services were provided that he was depositing a check from his insurance company into the checking account that he would use to pay for the repairs. <u>Id.</u>, 109 B.R. at 901. Even if <u>Fitzgerald</u> is not distinguishable, the Court is more convinced that the reasoning in <u>Dressler</u> accords with the language of Section 523(a)(2)(A). Therefore, the Debtor's statement about the wire transfer under the circumstances alleged does not support a claim under Section 523(a)(2)(A)

---

[1] Although the Complaint stated that the state court action contained a count for 'conversion,' Plaintiff's counsel acknowledged at the last status hearing that the claim was for 'conversion of services,' and Plaintiff does not allege that a secured creditor could bring a claim of conversion against the owner of the collateral for conversion of the collateral under the applicable state law. Plaintiff's counsel also acknowledged that the judgment received in the state court proceedings was a simple default judgment.

## C. Conclusion

For the foregoing reasons, the Debtor's Motion to Dismiss Count I of the Plaintiff's Adversary Complaint is GRANTED.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

September 30, 2010

Judge Manuel Barbosa